**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ROCK HILL DIVISION**

| | | |
|---|---|---|
| Sarah Godfrey-Arambula | ) | |
| Plaintiff, | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| Morgan Properties Payroll Services, Inc. | ) | |
| Defendant. | ) | |

**COMPLAINT**

COMES NOW Plaintiff, by and through her undersigned counsel, and files this her Complaint.

**PARTIES**

1. Plaintiff is a United States citizen and a resident of Indian Land, South Carolina.
2. Defendant, Morgan Properties Payroll Services, Inc., (hereinafter "Defendant" or "Morgan Properties") is a Pennsylvania corporation and is licensed to conduct business in South Carolina.
3. Defendant employed Plaintiff in South Carolina. The acts and omissions giving rise to this Complaint and causes of action occurred in Indian Land, South Carolina.
4. This Court has jurisdiction over the claims and causes of action raised in this Complaint pursuant to 28 U.S.C. § 1331.
5. Venue is proper in this judicial district because the unlawful acts alleged herein occurred substantially in Lancaster County, South Carolina.

6. At all relevant times, Defendant was an “employer” within the meaning of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et. seq.*

7. At all relevant times, Plaintiff was an “employee” within the meaning of the Americans with Disabilities Act, §§ 12101 *et. seq.* (hereinafter “ADA”).

**ADMINISTRATIVE PROCEDURES**

8. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (“EEOC”) on July 12, 2023 (EEOC Charge No. 436-2023-01930).

9. On April 17, 2024, Plaintiff was issued by the EEOC a Notice of Right to Sue on her Charge of Discrimination against Defendant, entitling her to commence an action under the Americans with Disabilities Act within ninety (90) days of receipt of that notice. Plaintiff timely filed her Complaint against Defendant within ninety (90) days of her receipt of the Notice of Right to Sue.

10. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this matter.

**FACTUAL ALLEGATIONS**

11. Plaintiff began employment with Defendant on June 21, 2022. Plaintiff worked as a Regional Human Resources Business Partner.

12. Plaintiff primarily worked remotely from her home in Indian Land, South Carolina.

13. Plaintiff is disabled and suffers from several health conditions, including dysautonomia, inflammatory bowel disease, common variable immune deficiency, gastroparesis, and bilateral clubfoot.

14. At the time that Plaintiff was hired, she was informed that her role was a remote position. She was also told that, while there was a travel requirement associated with her position, she would only have to travel between 5-10% of the time, and that she could handle the majority of her communications virtually on the Microsoft Teams platform.
15. Plaintiff's position was also listed as a remote position on job boards, in the company's internal system, and on her new hire paperwork.
16. Approximately one or two months after Plaintiff began working for Defendant, Megan Shank, the Director of Employee Relations, became Plaintiff's new supervisor.
17. In October of 2022, Plaintiff was told that she would need to fly to Nashville, Tennessee to attend a meeting.
18. Plaintiff cannot travel on airplanes due to her disabilities and a condition related to her immune system.
19. When Plaintiff told Ms. Shank that she could not fly and instead could drive to the meeting, Ms. Shank said that driving was not a good use of her time, and that Plaintiff could join the meeting virtually.
20. On December 5, 2022, Plaintiff attended a meeting with Ms. Shank. Plaintiff was experiencing issues with walking as she was leaving the meeting. Ms. Shank asked Plaintiff what was wrong, and Plaintiff informed Ms. Shank about the issue related to her disability. Ms. Shank then began mocking Plaintiff and told her that she looked unprofessional based on the difficulty that she was having.
21. After she notified Ms. Shank of her disabilities, Plaintiff began to experience disparate treatment and retaliation in the workplace.

22. Ms. Shank made several mocking and derogatory statements to Plaintiff, including, "we're not paying you to sit at home because of your disorder."
23. On December 19, 2022, Plaintiff received a work performance evaluation from Ms. Shank. Plaintiff received low ratings. Upon information and belief, Plaintiff received the lowest ratings of those with her job title, even though she had the most years of experience and the SPHR certification.
24. In January 2023, Plaintiff was informed that she was going to start being expected to travel three out of five days of the week, despite this high level of travel not being part of Plaintiff's job description and no reference of increased travel being made prior to Plaintiff telling Ms. Shank about her disabilities.
25. After being presented with this information, Plaintiff presented a note from her physician requesting several reasonable accommodations, including:
    a. Refraining from airline travel;
    b. Limiting travel to 10% of her work time;
    c. Avoiding prolonged standing.
26. Defendant denied Plaintiff's request for these accommodations and alleged that the requirement to travel for more than 50% of the workweek was an essential function of her position and had been since 2021.
27. This travel requirement was not explained to Plaintiff when she accepted the position, and Plaintiff was not mandated to meet this requirement during her first six (6) months of employment.

28. Other, non-disabled employees who held Plaintiff's same job title were not required to travel three days per week. These individuals included: Jessica Agar, Danielle Phillips, Audrey Synakowski, Sarah Andrzejewski, and Leah Merolillo.

29. One individual, Leah Merolillo, held Plaintiff's same job title, and was allegedly commuting two days per week to a corporate office. However, Ms. Merolillo complained to Ms. Shank about this requirement and Ms. Shank said that she would work with her on her schedule. Plaintiff was not given the same flexibility.

30. When Plaintiff requested accommodation, Ms. Shank told her to find another job where she would be happier. Plaintiff told Ms. Shank that she wanted to stay with the company but expressed concerns that she was not being treated in the same way as everyone else.

31. On February 24, 2023, Plaintiff met with Krista Reynolds, the Senior Vice President for Human Resources. Plaintiff again requested accommodation and told Ms. Reynolds that she felt as though she was being discriminated against by Ms. Shank because of her disability. Ms. Reynolds brushed off Plaintiff's concerns about discrimination.

32. Plaintiff then submitted accommodation paperwork completed by her physician. Ms. Reynolds had placed all of Plaintiff's medical documents in her employee file on a shared drive, potentially giving Plaintiff's coworkers access to Plaintiff's private information.

33. In April 2023, Ms. Reynolds and Ms. Shank demanded that Plaintiff provide them an answer about whether she would be able to perform all of the essential functions of her job and threatened her with insubordination.

34. On April 18, 2023, Plaintiff met with Ms. Reynolds, who told her that she would be transitioned out of her position in the near future.

35. On April 21, 2023, Ms. Reynolds presented Plaintiff with a separation agreement and release. April 24, 2023, was Plaintiff's last day working with Defendant.

36. Plaintiff's rights under the ADA were violated by Defendant's refusal to engage in the interactive process with Plaintiff in good faith so as to allow Plaintiff the opportunity to demonstrate she can perform the essential functions of her position. Defendant also terminated Plaintiff because of her disability, or perceived the Plaintiff as disabled and therefore discharged her from her employment. Defendant subjected Plaintiff to harassment because of her disability. Defendant also terminated Plaintiff because she engaged in protected activity under the ADA by requesting accommodations and reporting the discrimination she experienced.

37. Defendant's actions have been willful, wanton, and in reckless disregard of the rights of Plaintiff.

**FOR A FIRST CAUSE OF ACTION**
**Violation of the ADA 42 U.S.C § 12101 *et. seq*.**

38. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.

39. Plaintiff is a "person" and an "employee," and Defendant is an "employer" and "covered entity" as those terms are defined by 42 U.S.C. § 12111.

40. Plaintiff has a "disability" as that term is defined at 42 U.S.C. § 12102 in that she has physical impairments that limit one or more of her major life activities.

41. Plaintiff's performance at all times during her employment met and/or exceeded any reasonable expectations of Defendant for her role as a Regional Human Resources Business Partner.

42. Plaintiff was qualified for her position and could perform the essential functions of her job at all relevant times, with or without a reasonable accommodation.
43. Defendant discharged Plaintiff because of her disability. Defendant perceived Plaintiff as disabled at the time of her discharge and in the time period leading up to her discharge, beginning in October of 2022.
44. Plaintiff suffered an adverse employment action when the Defendant failed to properly accommodate Plaintiff in her position, failed to engage in the interactive process in good faith, and subsequently terminated Plaintiff's employment.
45. Defendant violated the ADA by (1) treating Plaintiff differently from her peers in the terms and conditions of her employment and ultimately terminating her from her employment; (2) refusing to provide reasonable accommodations for Plaintiff; (3) refusing to engage in the interactive process in good faith; (4) perceiving Plaintiff as disabled. Defendant committed a gross dereliction of its duty under the ADA by these failures; and (5) harassing Plaintiff because of her disability.
46. As a direct and proximate result of Defendant's violation of Plaintiff's rights under the ADA, Plaintiff has suffered lost back pay and front pay, lost benefits, and other pecuniary losses. In addition, she has and will continue to suffer emotional distress, embarrassment, and humiliation as a result of Defendant's wrongful and illegal conduct.
47. Defendant's action and unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. Accordingly, Plaintiff is entitled to receive punitive damages.

## FOR A SECOND CAUSE OF ACTION
**Retaliation in Violation of the ADA**

48. Plaintiff realleges each and every allegation contained in the above paragraphs as if repeated here verbatim.
49. Plaintiff was retaliated against in violation of the ADA and subjected to less favorable terms and conditions of employment than similarly situated employees because she requested reasonable accommodations and opposed the illegal and discriminating conduct of Defendant.
50. Plaintiff was refused accommodations, refused the interactive process, mocked for her disabilities, and discharged in retaliation for requesting reasonable accommodations.
51. Defendant's conduct is in violation of the ADA, 42 U.S.C. § 12203.
52. Wherefore, Plaintiff requests a trial by jury on her retaliation claim. As a direct and proximate result of the retaliation, Plaintiff has suffered lost wages, benefits, and other pecuniary losses. In addition, she has suffered emotional distress. Plaintiff is entitled to an award of damages for these injuries in an amount to be determined at trial.
53. Defendant's unlawful employment practices described herein were willful, wanton, malicious, and in reckless disregard for Plaintiff's rights. Accordingly, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, upon the trial of this matter, Plaintiff prays that the Court enter judgment for her and award the following relief:

A. A judgment and Order requiring Defendant to reinstate Plaintiff to her Regional Human Resources Business Partner position or a comparable position with the same or equal salary, wages, and benefits;

B. A judgement awarding Plaintiff lost wages, including front pay, lost employment benefits, and any other compensation denied or lost because of the violation of the ADA;

C. Compensatory damages for the emotional distress she has suffered;

D. Punitive damages;

E. An Order that the costs of this action be taxed against Defendant;

F. An Order awarding Plaintiff reasonable attorney's fees;

G. Pre-judgment and post-judgment interest on all amounts for which pre-judgment and post-judgment interest is legally allowable;

H. All other relief whether legal, equitable, or injunctive, as this Court deems just and necessary;

I. Plaintiff demands a jury trial in this action.

**CROMER BABB & PORTER, LLC**

BY: /s/ *Jacob J Modla*

Jacob J. Modla (#12639)
1418 Laurel Street, Suite A
Post Office Box 11675
Columbia, South Carolina 29211
Phone 803-799-9530
Fax 803-799-9533
jake@cromerbabb.com

*Attorney for Plaintiff*

July 15, 2024
Columbia, South Carolina